OPINION OF THE COURT
Irving Lang, J.
Defendant’s constitutional challenge to the People’s predicate felony offender information raises the unique issue of whether a felony sentence in South Carolina which includes a “banishment” requirement can be utilized for increased punishment under section 70.06 of the Penal Law or cannot be utilized as unconstitutionally obtained within the meaning of CPL 400.21 (subd 7, par [b]).
FACTS
In 1981 Larry Green was indicted for robbery in the second degree and assault in the second degree. On September 24,1981, the defendant pleaded guilty to attempted robbery in the second degree (Penal Law, §§ 110.00, 160.10) with a promise of a sentence of 1 to 3 years’ imprisonment with an option to withdraw his plea of guilty if it were determined that he was a second felony offender.
On December 8, 1981, the District Attorney filed a statement of predicate felony conviction alleging that on June 13, 1980, in the Court of General Sessions, Kershaw County, South Carolina, Larry Green was convicted of the felony of housebreaking.
*340 The defendant rejected an opportunity to withdraw his guilty plea but challenged the South Carolina conviction. He admits that he is the person convicted in South Carolina and that housebreaking is equivalent to the New York felony of burglary.
However, a conviction necessarily requires a valid sentence for second felony offender purposes. (Penal Law, § 70.06, subd 1, par [b], cl [ii]; People v Slepinski, 54 AD2d 202.) The defendant claims that the sentence in South Carolina was unconstitutional, thus nullifying the predicate felony offender information.
The sentence in South Carolina was that the defendant be imprisoned “for a term of five years * * * that the sentence * * * is hereby suspended * * * that the said defendant is hereby placed on probation for a period of five (5) years * * * that at the defendant’s request he be permitted to go to the State of New York and not return to South Carolina during the period of his probation” (emphasis supplied).
Although the sentence was arranged between the defendant’s attorney and the court and prosecutor in Kershaw County, he now claims that the sentence is unconstitutional and thereby void for second felony purposes. He asserts that the sentence violates the interstate commerce clause (US Const, art I, § 8, cl 3) and the privileges and immunities clause (US Const, art IV, § 2) of the United States Constitution. He also maintains that “banishment” is a violation of equal protection, constitutes cruel and unusual punishment and is prohibited as against public policy.
INTERSTATE COMMERCE AND PRIVILEGES AND IMMUNITIES
The defendant cites numerous cases affirming the fundamental right of citizens to travel freely between States. Attempts to infringe upon the right to interstate travel have consistently been struck down as violating the interstate commerce clause and the privileges and immunities clause. (Elkison v Deliesseline, Fed Case No. 4366; Smith v Turner, 7 How [48 US] 283; Crandall v Nevada, 6 Wall [73 US] 35; Paul v Virginia, 8 Wall [75 US] 168; Ward v Maryland, 12 Wall [79 US] 418; Twining v New Jersey, 211 *341 US 78; Edwards v California, 314 US 160; Shapiro v Thompson, 394 US 618; Dunn v Blumstein, 405 US 330; Commonwealth of Pennsylvania v Porter, 480 F Supp 686.)[1]
Thus, the defendant claims that the condition prohibiting the defendant from exercising his right to interstate travel nullifies the South Carolina conviction. He asserts that despite his express agreement, the right cannot be waived.
The defendant’s contentions are without merit. The right to interstate travel is not absolute as it applies to convicted felons. None of the cases cited by the defendant involved restriction of travel as a result of a criminal conviction. A jail sentence certainly involves a clear restriction on a defendant’s right to travel. A probation condition may restrict a defendant’s mobility (Penal Law, § 65.10, subd 3, par [b]).
“Conditions of probation ** * *
“the court * * * shall require * * * that the defendant
“remain within the jurisdiction of the court unless granted permission”.
Simply stated, if banishment is illegal, it is not because it imposes travel restrictions since such restrictions can clearly be imposed on convicted criminals.
BANISHMENT
The most troublesome contention of the defendant relates to banishment per se as a sentence.
Banishment is “[ejxpulsion, or deportation by the political authority on the ground of expediency; punishment by forced exile either for years or for life; a punishment inflicted on criminals, by compelling them to quit a city, place, or country, for a specific period of time, or for life.” (8 CJS, Banishment, p 593.)
Banishment, at common law, was not considered as cruel and unusual punishment. Rather, it was a common method *342 of punishing those convicted of crimes in England. (People v Baum, 251 Mich 187.)
People v Potter (1 Parker Cr Rep 47, 54) provides further historical background: “Banishment was first known in England as abjuration, where the party accused fled to a sanctuary, confessed his crime, and took an oath to leave the kingdom and not return without permission (4 Bl. Com. 333; 3 P. Williams, 37) * * * After abjuration was abolished, and about the reign of Charles II, it became usual to grant pardons on condition of banishment, and that the original sentence should be revived on a violation of the stipulation of its remission (Kel. pre. 4; Williams J. Felony, VI; 1 Ch. Cr. L. 789).”
Whatever the previous historical validity, banishment from one State to another or to another country has consistently been condemned in this century as illegal.
The rationale is set forth in People v Baum (supra, p 189): “To permit one State to dump its convict criminals into another would entitle the State believing itself injured thereby to exercise its police and military power in the interest of its own peace, safety, and welfare, to repel such an invasion: It would tend to incite dissension, provoke retaliation, and disturb that fundamental equality of political rights among the several States which is the basis of the union itself. Such a method of punishment is not authorized by statute, and is impliedly prohibited by public policy.”
Apart from claims that banishment is not authorized by statute and violates public policy, courts have held that banishment constitutes “cruel and unusual” punishment and denies due process of law. (Dear Wing Jung v United States, 312 F2d 73.)[2]
*343 Whatever statutory, policy or constitutional considerations courts have enunciated to void a sentence of banishment, it is clear that the underlying conviction, whether by trial or plea of guilty, is unaffected. The infirmity goes to the sentence and not the underlying plea or verdict. (People v Baum, supra; Bird v State, 231 Md 432; Rutherford v Blankenship, 468 F Supp 1357; Ex parte Scarborough, 76 Cal App 2d 648; Dear Wing Jung v United States, supra.)
The plea of guilty in South Carolina was voluntarily and knowingly entered with a full understanding of the conditions after consultation with counsel. The defendant requested that he serve his probation in New York State. (Cf. Haley v Peyton, 303 F Supp 336.) At no time before sentence did the defendant request to withdraw his plea. (See State v Gilliam, 274 SC 324.) There is therefore no merit to the defendant’s contention that the underlying plea of guilty is void.
But if the sentence is void, does not the predicate felony offender information fall as New York law requires both a felony plea or verdict and a valid sentence before a person can be adjudicated a second felony offender?
The District Attorney contends that if the defendant’s sentence in South Carolina were unconstitutional, the only remedy would be for the defendant to be resentenced nunc pro tunc leaving the underlying felony intact for predicate offender purposes.
There are two problems with the People’s position. First, the People assume that all sentences are correctable. The doctrine of nunc pro tunc sentencing would clearly apply if for example a sentence was imposed which was statutorily too short or too long; or where a defendant was not apprised of his right to appeal (People v Lawrence, 37 AD2d 872) or where a defendant was not given an opportunity to be heard at sentence. (People v Wade, 49 AD2d 770; cf. People v Sullivan, 3 NY2d 196.) But that is not the situation where a sentence is not correctable. In the latter situation, *344 a totally unconstitutional sentence could not be cured nunc pro tunc. Rather a new sentence would have to be entered as of the date of the new sentence.
A second problem with the District Attorney’s nunc pro tunc argument is that unlike the situation with a prior New York felony, the courts of this State cannot resentence the defendant for his South Carolina conviction. That is a matter for the South Carolina courts.
In this connection, in assessing out-of-State felonies, our courts should examine the law in the State where the prior felony occurred. Clearly, if a sentence is illegal in that State, it cannot be used for increased punishment purposes in this State.
Interestingly, banishment was held to be an illegal sentence in South Carolina as far back as 1900. In State v Baker (58 SC 111, 113), the Supreme Court of South Carolina held that a circuit court did not possess “[the] right to impose such a sentence as is involved in the perpetual banishment of the defendant from the State” and remanded for resentence. However, in accord with most jurisdictions which have ruled on the issue, the Supreme Court of South Carolina has recently held that where banishment is but a portion of an otherwise valid sentence, only the banishment portion of the sentence is void and the rest of the sentence is valid. (Henry v South Carolina, __ SC _, 280 SE2d 536; see, also, People v Baum, supra; Ex parte Scarborough, supra.)
In the instant case the defendant, in effect, received two sentences: first, a five-year prison term, execution of which was suspended, a perfectly valid sentence under both New York and South Carolina law; second, a sentence of probation for a period of five years, a perfectly valid sentence under both South Carolina and New York law. As a condition of probation, he was banished from South Carolina for five years. This condition of probation is illegal, void and unenforceable but does not affect the legality of the rest of the judgment.
The invalid probation condition is clearly separable and severable from the rest of the obviously valid sentence.
*345 Accordingly the defendant is declared a second felony offender.

. Policemen admitted telling people to get out of Millvale (Pa.) or they would be arrested. “[Tjhere is no authority in law for an individual policeman to take it upon himself to determine which person should be subject to a de facto sentence of banishment * * * there is a violation of the constitutional rights of U.S. citizens to move freely within the confines of this country.” (Commonwealth of Pennsylvania v Porter, 480 F Supp 686, 698.)

. There is a conflict in the cases as to whether intrastate banishment, i.e., leaving the city or county is valid. California (People v Lopez, 81 Cal App 199; Ex parte Scarborough, 76 Cal App 2d 648) and North Carolina (State v Culp, 30 NC App 398) have held that such sentences are beyond the power of the court. Georgia, on the other hand (State v Collett, 232 Ga 668; Wilson v State, 151 Ga App 501) has upheld such sentences as a reasonable condition of probation. The better view, in my opinion, is that a court may, as a condition of probation or conditional discharge, bar a defendant from certain *343 areas if the penalty is reasonably related to the offense. Thus, if a defendant commits crimes in certain areas or places, the court could bar the defendant from those areas as a condition of probation provided that if the defendant has a legitimate and compelling reason to go to that area or place, he could apply to the court for specific permission. (See Penal Law, § 65.10, subd 2, par [b].)